**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

**ROWDY WHITTINGTON,**

**Plaintiff,**

**v.**

**LIMETREE BAY REFINING, LLC, LIMETREE BAY REFINING OPERATING, LLC, and ALLISON INDUSTRIAL SERVICES, LLC,**

**Defendants.**

**1:21-cv-00315-RAM-EAH**

**TO: Pamela L. Colon, Esq.**
**Jordan Thomas Precht, Esq.**
**Scott Michael Richard, Esq.**
**Ryan W. Green, Esq.**
**Michael W. McMahon, Esq.**
**Richard H. Hunter, Esq.**

**ORDER**

**THIS MATTER** comes before the Court on Plaintiff Rowdy Whittington's "Motion to Vacate Arbitration Award and to Decline Remand for Arbitration," filed on November 24, 2025. Dkt. No. 75. In support of his Motion, Plaintiff filed a Memorandum asserting that the arbitration award issued in favor of Defendant Allison Industrial Services, LLC ("Allison") must be vacated pursuant to 9 U.S.C. § 10(a)(4). Dkt. No. 79. Allison filed an Opposition on December 5, 2025, Dkt. No. 80, and Plaintiff filed a Reply on December 11, 2025, Dkt. No. 81.

In his Motion, Plaintiff argues that vacatur is warranted because: (1) the Dispute Resolution Agreement he executed with Excel Construction & Maintenance VI, Inc. ("Excel") was void or unenforceable because it failed to include arbitration terms required by the Term Services Agreements between Limetree and its contractors; (2) the arbitrator

exceeded his authority by proceeding before one arbitrator rather than a three-member panel; and (3) the arbitrator exceeded his authority by failing to properly apply substantive Virgin Islands law. Plaintiff requests that the Court vacate the award and allow this matter to proceed before the Court, or, alternatively, remand the matter to arbitration before a three-member panel. Dkt. No. 78. For the reasons that follow, the Court will deny Plaintiff's Motion.

## BACKGROUND

This action arises from injuries Plaintiff Rowdy Whittington ("Plaintiff") alleges he sustained while working at the Limetree Bay Refinery on St. Croix. *See* Dkt. No. 1. Plaintiff's claims were later sent to arbitration pursuant to a dispute resolution agreement he had executed with his employer, Excel. Dkt. No. 29. During the arbitration, Plaintiff obtained two separate Term Services Agreements involving Limetree Bay Refining, LLC ("Limetree")—one concerning Allison and another associated with Excel's work at the Limetree Bay Refinery ("Refinery")—and relied on provisions in those agreements to challenge both the agreement under which the arbitration had commenced and the manner in which the arbitration was proceeding. The relevant events and agreements are set forth below.

### A. Plaintiff's Claims, the Excel DRA, and the Order Compelling Arbitration

Plaintiff was employed by Excel. Dkt. No. 1. On June 19, 2019, Plaintiff executed a Dispute Resolution Agreement with Excel (the "Excel DRA") in connection with his employment. Dkt. No. 79-1. The Excel DRA requires final and binding arbitration of claims arising out of or relating to Plaintiff's employment with Excel, his presence at the Limetree

Bay Refinery or Terminal Facility, or his presence at another Excel worksite. *Id.* at 1. The agreement expressly encompasses tort claims, including claims for personal injury, and extends to claims against Limetree and other contractors or subcontractors working at the Limetree facility or doing business with Excel on St. Croix. *Id.*

The Excel DRA provides for arbitration before "a neutral arbitrator" under the American Arbitration Association's ("AAA") Employment Arbitration Rules. Dkt. No. 79-1 at 1. It also assigns the arbitrator "exclusive authority" to resolve disputes concerning the agreement's interpretation, applicability, enforceability, or formation, including a contention that all or part of the agreement is void or voidable. *Id.* at 2.

On November 30, 2021, Plaintiff commenced this action against Limetree, Limetree Bay Refining Operating, LLC ("Limetree Operating"), and Allison. Dkt. No. 1. Plaintiff alleges that, on December 2, 2019, while working for Excel at the Refinery, he was struck in the head by a metal plate that fell while he was walking to his job location. *Id.* ¶¶ 7–9. Plaintiff alleges that Allison, another contractor performing work at the Refinery, was responsible for the metal plate and his resulting injuries. *Id.* ¶¶ 8–9, 21–26.

On December 5, 2022, Allison filed a Motion to Compel Arbitration and Stay Proceedings, based on the Excel DRA. Dkt. No. 15. Plaintiff did not oppose the Motion to Compel Arbitration. Dkt. No. 25. On February 10, 2023, Plaintiff's counsel advised Allison's counsel that, by conceding to Allison's Motion to Compel Arbitration, Plaintiff would proceed to compel arbitration pursuant to the Excel Dispute Resolution Agreement Dkt. No. 80-1.

On February 27, 2023, the Court granted Allison's Motion to Compel Arbitration. Dkt. No. 29. The Court observed that Plaintiff did not oppose arbitration and construed his response as a concession to Allison's motion. *Id.* at 4. The Court also considered whether the requirements for compelling arbitration were satisfied and noted that the Excel DRA covered tort and personal injury claims against contractors or subcontractors working at the Limetree Bay Terminal or Refinery. *Id.* at 4 n.1. The Court further noted that the Excel DRA delegated questions of arbitrability to the arbitrator. *Id.* at 2, 4 & n.1. The Court concluded that "the parties herein entered a valid agreement to arbitrate, and Whittington's claim falls within the scope of that valid agreement," stayed the action pending completion of arbitration, and directed the parties to provide periodic status reports. *Id.* at 5 & n.2. Plaintiff thereafter filed a Demand for Arbitration with the AAA pursuant to the Excel DRA. *See* Dkt. No. 79 at 1–2.

On or about January 30, 2024, the AAA appointed the Honorable Robert L. Childers, Ret., as the sole arbitrator. Dkt. No. 79-7 at 1–2. Neither party objected to his appointment. *Id.* at 2. On May 28, 2024, the parties participated in an Arbitration Management Conference. *Id.* During that conference, the parties agreed that the arbitrator would apply the Federal Rules of Evidence, substantive Virgin Islands law, and Plaintiff's Employment Agreement—the agreement containing the Excel DRA. *Id.*

### B. The Term Services Agreements and Plaintiff's Motion to Conform

During the arbitration proceedings, Plaintiff obtained a Term Services Agreement between Limetree and Allison, identified as Contract No. LTR-013 (the "LATSA"). Dkt. No.

80-4 at 1; *see also* Dkt. No. 79-2. The LATSA governs the contractual relationship between Limetree and Allison for work performed at the Refinery and contains provisions addressing both disputes between Limetree and Allison and employment-related disputes involving contractor employees. *See* Dkt. No. 79-2.

Article 18 of the LATSA is titled "Governing Law; Dispute Resolution Generally." *Id.* at 24. Section 18.2.1 provides that, "[e]xcept for any employment related disputes as provided in Article 19 below," disputes "between the Parties"—Limetree and Allison—arising out of or relating to the LATSA, Work Releases, or the parties' contractual obligations "shall be resolved solely and exclusively in accordance with the procedures specified in this Section 18.2." *Id.* Thus, § 18.2.1 expressly refers employment-related disputes to Article 19 rather than treating them as disputes between Limetree and Allison under that subsection.

Article 19 of the LATSA is titled "Dispute Resolution Program (DRP) for Employment Matters," and is the mechanism by which the contractor must comply with § 18.2.3. *Id.* at 25. It requires the contractor to maintain a written dispute-resolution program covering employment-related claims, including personal injury and tort claims involving contractor employees. *Id.* at 25–26. The contractor's program must identify Limetree and other contractors performing services at the Refinery as intended third-party beneficiaries and provide for binding arbitration of covered disputes between contractor employees and those beneficiaries. *Id.* Article 19 also states that its employment-related arbitration provisions do not modify or alter Limetree's and the contractor's rights and obligations under Article 18. *Id.* Article 19 further provides that the material provisions of the contractor's employee

dispute-resolution program are subject to Limetree's confirmation that required provisions have been included, "including but not limited to the language requirements set forth in Section 18.2.2." *Id.* at 25.

Section 18.2.2 of the LATSA sets forth the arbitration procedure that applies if the dispute described in § 18.2.1 is not resolved through the preliminary procedures contained in that section. *Id.* at 24. It provides for arbitration administered by the AAA under its Commercial Arbitration Rules. *Id.* The LATSA calls for a single arbitrator when the amount in controversy is no more than $1 million and a panel of three arbitrators when the amount in controversy exceeds $1 million. *Id.*

Section 18.2.3 of the LATSA addresses additional contracts the contractor must obtain in connection with work at the Refinery. *Id.* It requires the contractor to include a provision substantively the same as Article 18 in contracts with subcontractors. *Id.* It separately requires employees, agents, or subcontractors performing work at or related to Limetree's site to execute a written agreement containing, at a minimum, language substantially the same as the "Employment Arbitration Policy" attached to the LATSA as Schedule A. *Id.*; *see also* Dkt. No. 80-13. The LATSA further states that a failure to obtain the required executed agreement before permitting the individual to perform work constitutes a material breach of the contractor's obligations under the LATSA. Dkt. No. 79-2 at 24.

Schedule A contains the Employment Arbitration Policy referenced in § 18.2.3 of the LATSA. Dkt. No. 79-2 at 30–33; *see also* Dkt. No. 80-13. The policy addresses disputes between contractor employees and the contractor or identified third-party beneficiaries and

covers, among other matters, bodily injury and tort claims. Dkt. No. 80-13. It provides for arbitration under the AAA Employment Arbitration Rules. *Id.* at 1. Under the portion of Schedule A entitled "Notice and Arbitration Process," the policy states that, if the dispute is not resolved through the preliminary procedures set forth there, "[t]here shall be one arbitrator selected by AAA." *Id.* Schedule A also assigns substantive and procedural questions of arbitrability to the arbitrator. *Id.*

On September 27, 2024, Plaintiff filed a Motion to Conform Arbitration Proceeding based on the LATSA. Dkt. No. 79-6. Plaintiff asserted that he was a third-party beneficiary of the LATSA and relied on that agreement's § 18.2.2 in requesting that the arbitration proceed before three arbitrators because the amount in controversy exceeded $1,000,000. *Id.* at 1–4. Allison opposed the Motion to Conform. Dkt. No. 80-5. Allison maintained that Plaintiff initiated the arbitration pursuant to the Excel DRA, that the Excel DRA governed Plaintiff's personal injury claim against Allison, and that the LATSA did not entitle Plaintiff to invoke the arbitration procedure he requested. *Id.* at 1–12.

Plaintiff later obtained a second Term Services Agreement—Contract No. LTR-015—between Limetree and Excel (the "LETSA").[1] *See* Dkt. No. 79-3. In his October 22, 2024 Reply in support of the Motion to Conform, Plaintiff represented that Excel had produced the LETSA in response to a subpoena. Dkt. No. 80-6 at 1–2. The LETSA contains provisions

[1] Contract No. LTR-015 was originally executed between Limetree and Sun Constructors, Inc. *See* Dkt. No. 79-3 at 1, 4; Dkt. No. 80-12 at 1, 4. A subsequent addendum to the same contract identifies Excel Construction & Maintenance VI, Inc. as the contractor under that agreement. Dkt. No. 80-15 at 12.

materially similar to those in the LATSA. *Compare* Dkt. No. 79-2 *with* Dkt. No. 79-3. Like the LATSA, the LETSA separately addresses disputes between Limetree and the contractor and employment-related disputes involving contractor employees. *See generally* Dkt. No. 79-3. It also requires the contractor to maintain an employee dispute-resolution program, identifies requirements for that program in Article 19, and includes an Employment Arbitration Policy in Schedule A. *Id.* at 24–25. The relevant distinction is the identity of the contractor: Allison is the contractor under the LATSA, while Excel is the contractor under the LETSA. *Compare* Dkt. No. 79-2 *with* Dkt. No. 79-3. Thus, Article 19 of the LATSA concerns the employee dispute-resolution program Allison was required to maintain, while Article 19 of the LETSA concerns the employee dispute-resolution program Excel was required to maintain.

After obtaining the LETSA, Plaintiff expanded the relief requested in his Motion to Conform. Dkt. No. 80-6 at 1–5. Plaintiff maintained that Article 19 of the LETSA required Excel's dispute-resolution program to include provisions referenced in § 18.2.2 of the LETSA and argued that the Excel DRA failed to include provisions as required. *Id.* He therefore argued that the Excel DRA was void and that the arbitration should be dismissed for lack of jurisdiction. *Id.* In the alternative, Plaintiff asked the arbitrator to stay the arbitration so that this Court could determine whether the Excel DRA was valid. *Id.* at 4.

### C. The Arbitrator's October 31, 2024 Order

On October 31, 2024, the arbitrator entered an Order denying Plaintiff's Motion to Conform Arbitration Proceeding. Dkt. No. 79-7. The arbitrator considered Plaintiff's Motion to Conform, Allison's Opposition, Plaintiff's Reply, and the exhibits submitted with those

filings. *Id.* at 1–4. In recounting how the arbitration had commenced, the arbitrator noted that Plaintiff had requested arbitration pursuant to the Excel DRA, that Plaintiff's personal injury claim against Allison fell within the claims described in that agreement, and that the arbitration had proceeded before a neutral arbitrator in accordance with the Excel DRA. *Id.* at 1–3. The arbitrator also addressed Plaintiff's reliance on Article 19 of the LATSA and determined that the provision required Allison to maintain an employment dispute-resolution program for claims involving Allison's employees, not Excel's employees—Excel employed Plaintiff. *Id.* at 2.

The arbitrator also addressed Plaintiff's asserted status as a third-party beneficiary of the LATSA. Assuming Plaintiff possessed such status, the arbitrator determined that Plaintiff had waived any right to proceed under the arbitration provision in the LATSA by requesting arbitration pursuant to the Excel DRA, proceeding without objection to the appointment of a sole arbitrator, and waiting approximately nineteen months after entry of the Court's Order compelling arbitration to file his Motion to Conform. *Id.* at 2–3. The arbitrator denied the Motion to Conform, Plaintiff's request to dismiss the arbitration for lack of jurisdiction, and his alternative request to stay the proceedings. *Id.* at 3–4. The arbitration thereafter proceeded to a final hearing. Dkt. No. 80-8.

**D. The Final Award**

On November 3, 2025, the arbitrator issued a Final Award in favor of Allison. Dkt. No. 79-4. The Final Award reiterates that the parties agreed that the Federal Rules of Evidence, substantive Virgin Islands law, and the Excel DRA would apply. *Id.* at 1. In addressing

Plaintiff's negligence claim, the arbitrator cited *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016), for the elements of negligence. *Id.* at 10. He found that Plaintiff had not established where the metal plate came from, how or why it fell, or that Allison was responsible for it. *Id.* at 10–11. The arbitrator further found that, even assuming Plaintiff could establish the duties and breaches he alleged, Plaintiff had not shown that any breach by Allison caused his injuries. *Id.* at 1011. He then separately considered Plaintiff's premises liability theory and whether Allison possessed or controlled the area of the Refinery where the accident allegedly occurred. *Id.* at 11–12. In addressing that claim, he stated that possession or control of the premises provides the basis for the duty of care imposed on a possessor of land under Virgin Islands law. *Id.* at 11 (citing *Antilles School*, 64 V.I. at 408).

To determine who qualifies as a "possessor of land," the arbitrator looked to § 49 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. *Id.* at 11. Section 49 defines a possessor of land by reference to a person's occupation and control of the property or, in specified circumstances, the right to immediate occupation and control. *Id.* at 12. The arbitrator cited *Davis by Bynoe v. American Youth Soccer Organization*, No. ST-2009-CV-00070, 2024 WL 4710913, at *10 (V.I. Super. Ct. Oct. 29, 2024), a Virgin Islands Superior Court decision in which the court conducted a *Banks*[2] analysis, concluded that § 49

[2] *See Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). In *Banks*, the Supreme Court of the Virgin Islands held that 1 V.I.C. § 4 does not require Virgin Islands courts to mechanically apply the most recent Restatement. *Id.* at 979–81. Rather, because Virgin Islands courts possess authority to shape the Territory's common law, when no binding local precedent controls, the court must determine the rule of common law appropriate for the Virgin Islands instead of treating a Restatement provision as automatically controlling. *Id.* at 979–81. In doing so, the court considers whether the

represented the soundest rule for the Virgin Islands to adopt, and applied § 49's definition of a possessor of land. *Id.* at 11. In applying that definition to the instant arbitration proceeding, the arbitrator found that Plaintiff had not established that Allison possessed or controlled the area where the alleged accident occurred. *Id.* at 12.

The arbitrator's application of Virgin Islands law later became one of Plaintiff's grounds for seeking vacatur of the Final Award. Plaintiff contends that, notwithstanding *Davis*, the arbitrator was required to conduct an independent *Banks* analysis before relying on § 49 as part of Virgin Islands law. Dkt. No. 79 at 15–18. Plaintiff also contends that the arbitrator failed to consider whether Allison could owe a duty to warn even if Allison did not possess or control the premises. *Id.* at 19. Before the arbitration hearing, Plaintiff submitted *Simkins v. Bank of Nova Scotia*, 79 V.I. 931 (V.I. 2025), to the arbitrator. Dkt. No. 80-9 at 1. The arbitrator subsequently dismissed Plaintiff's negligence and premises liability claims and entered the Final Award in Allison's favor. Dkt. No. 80-10 at 12–14. Plaintiff further argues in support of vacatur that, if neither the LATSA nor the LETSA governed his arbitration, Allison could not enforce the Excel DRA because Allison was not a signatory to that agreement. Dkt. No. 81 at 3, 5–6.

---

proposed rule is consistent with Virgin Islands jurisprudence and policy and which approach represents the soundest rule for the Virgin Islands. *Id.* at 982–85.

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act ("FAA") permits a court to vacate an arbitration award only on the grounds identified in 9 U.S.C. § 10(a). Those statutory grounds are exclusive. *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012). Section 10(a) permits vacatur where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators engaged in specified misconduct or other misbehavior prejudicing a party's rights; or (4) the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)–(4). In the instant matter, Plaintiff relies on § 10(a)(4) and contends that the arbitrator exceeded the authority conferred upon him. *See* Dkt. No. 79.

An arbitrator's authority derives from the parties' agreement and the matters they submit to him for resolution. *Carlson v. Norwegian Cruise Line Holdings, Ltd.*, No. 2013-115, 2018 WL 3824355, at *5 (D.V.I. Aug. 10, 2018). Through their agreement, the parties may limit the issues subject to arbitration, the individuals with whom they will arbitrate, and the procedures that will govern the arbitration proceedings. *Sutter*, 675 F.3d at 219–20. Those contractual limitations define the boundaries of the arbitrator's authority. *Id.*

Therefore, an arbitrator exceeds that authority when he: (1) decides an issue that the parties did not submit to him; (2) grants relief that cannot be rationally derived from the parties' agreement and submissions; or (3) issues an award so completely irrational that it

lacks support altogether. *Sutter*, 675 F.3d at 219–20; *see also Bayside Construction, LLC v. Smith*, No. 3:20-cv-0117, 2021 WL 3666804, at *2 (D.V.I. Aug. 18, 2021), *aff'd*, 2022 WL 2593303, at *3 (3d Cir. July 8, 2022) (not precedential).

Notably, the FAA does not permit a reviewing court to decide anew whether the arbitrator correctly interpreted the parties' agreement or correctly resolved the factual and legal issues submitted to him. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *Sutter*, 675 F.3d at 220. It is not enough to establish that the arbitrator committed an error, "or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010). Rather, when the arbitrator is "arguably construing or applying the contract" in deciding an issue the parties authorized him to resolve, the award must stand notwithstanding a reviewing court's disagreement with the arbitrator's interpretation. *Oxford Health Plans*, 569 U.S. at 569.

The Supreme Court's use of "arguably" reflects the distinction between an error committed while exercising delegated authority and an exercise of authority the parties did not confer. *See Oxford Health Plans*, 569 U.S. at 569. When the arbitrator interprets the parties' agreement in resolving an issue submitted to him, an incorrect interpretation does not, without more, establish that he exceeded his powers. *Id.*; *Sutter*, 675 F.3d at 220. Section 10(a)(4) permits vacatur only when the arbitrator departs from the task entrusted to him and exercises authority not grounded in the parties' agreement or submissions. *See Stolt-Nielsen*, 559 U.S. at 671–72 (holding that the arbitrators exceeded their authority by

impermissibly imposing a procedure according to their own policy judgment rather than according to the parties' agreement).

## II. Analysis

Plaintiff advances three grounds for vacatur under § 10(a)(4). Dkt. No. 79. First, he contends that the Excel DRA was void or unenforceable because it did not include provisions required by the LATSA and the LETSA. *Id.* at 12–15; Dkt. No. 81 at 1, 3–5. Second, he contends that the respective § 18.2.2 provisions of the LATSA and the LETSA, which he believes are applicable to the Excel DRA, required the arbitration to proceed before a three-member panel because he sought more than $1 million in damages. *Id.* Third, he contends that the arbitrator failed to properly apply Virgin Islands law by relying on § 49 of the Restatement (Third) of Torts without conducting an independent *Banks* analysis and by failing to consider whether Allison could owe a duty to warn even if Allison did not possess or control the premises. Dkt. No. 79 at 16–19; Dkt. No. 81 at 7–8. In analyzing Plaintiff's arguments for vacatur under § 10(a)(4), the Court must now determine whether the arbitrator: (1) decided an issue that the parties did not submit to him; (2) granted relief that cannot be rationally derived from the parties' agreement and submissions; or (3) issued an award so completely irrational that it lacks support altogether. *See, e.g.*, *Sutter*, 675 F.3d at 219–20; *Bayside Construction*, 2021 WL 3666804, at *2.

### A. Whether the Arbitrator Decided an Issue Not Submitted to Him

Plaintiff executed the Excel DRA on June 19, 2019. Dkt. No. 79-1 at 1–2. As discussed above, the Excel DRA delegates to the arbitrator "exclusive authority" to resolve disputes

concerning its interpretation, applicability, enforceability, and formation, including any contention that all or part of the agreement is void or voidable. *Id.* at 2. After Allison moved to compel arbitration pursuant to the Excel DRA, Plaintiff did not oppose the motion and requested arbitration pursuant to that agreement. Dkt. No. 15; Dkt. No. 25 at 1–2; Dkt. No. 80-1 at 1. The Court thereafter compelled Plaintiff's personal injury claim to arbitration pursuant to the Excel DRA, finding that the parties had entered a valid agreement to arbitrate, that Plaintiff's claim fell within its scope, and that the agreement delegated questions of arbitrability to the arbitrator. Dkt. No. 29 at 2, 4–5 & n.1.

During the arbitration, Plaintiff placed the relationship between the Excel DRA and the LATSA and the LETSA before the arbitrator. *See* Dkt. No. 79-6. In his Motion to Conform, Plaintiff relied on the LATSA and asserted that, as a third-party beneficiary, he was entitled to invoke its arbitration provisions. *Id.* at 1–4. After obtaining the LETSA, Plaintiff argued in his Reply that the Excel DRA was void because it failed to include provisions he contended were required by the LETSA and alternatively requested a stay so that this Court could determine the Excel DRA's validity. Dkt. No. 80-6 at 1–5. The enforceability of the Excel DRA and its relationship to the LATSA and the LETSA were therefore questions Plaintiff himself submitted to the arbitrator for resolution. Dkt. Nos. 79-6, 80-6.[3]

Plaintiff also submitted to the arbitrator the issue concerning the number of arbitrators. Dkt. No. 79-6. His Motion to Conform relied on § 18.2.2 of the LATSA and argued

[3] Although Plaintiff presented the issue to the arbitrator for resolution, it is clear that Allison conceded that the issue was to be resolved by the arbitrator and not the Court. The issue was therefore before the arbitrator with the parties' consent.

that, because he sought more than $1 million in damages, the arbitration was required to proceed before a three-member panel. *Id.* at 1–4. After obtaining the LETSA, Dkt. No. 79-3, Plaintiff relied on that agreement as an additional basis for challenging the arbitration procedure. Dkt. No. 80-6. The arbitrator was therefore asked to determine which contractual arbitration procedure governed Plaintiff's claim and whether Plaintiff was entitled to proceed before three arbitrators. The parties likewise submitted Plaintiff's negligence and premises liability claims, and the substantive law governing those claims, to the arbitrator. At the May 28, 2024 Arbitration Management Conference, the parties agreed that the arbitrator would apply substantive Virgin Islands law. Dkt. No. 80-7 at 2. The arbitration thereafter proceeded on Plaintiff's negligence and premises liability claims, and the arbitrator applied Virgin Islands authority in resolving them. Dkt. No. 80-10 at 10–14. Plaintiff now contends that the arbitrator applied Virgin Islands law incorrectly because he relied on § 49 of the Restatement (Third) of Torts without conducting an independent *Banks* analysis. Dkt. No. 79 at 15–18. That contention concerns the manner in which the arbitrator applied substantive Virgin Islands law to claims the parties submitted to him for resolution, rather than whether he decided a matter that was never submitted to him.

The record establishes that each challenged determination concerned a matter submitted to the arbitrator by the parties for resolution and fell within the scope of the issues the parties authorized him to resolve. Accordingly, vacatur is not warranted on the ground that the arbitrator decided an issue that the parties did not submit to him.

### B. Whether the Arbitrator's Determinations Were Rationally Derived From the Parties' Agreements and Submissions

#### 1. The Excel DRA, the LATSA, and the LETSA

Plaintiff first contends that the Excel DRA was void or unenforceable because it did not include provisions that he maintains were required by the LETSA. Dkt. No. 79 at 8–15. According to Plaintiff, Article 19 required Excel's employee dispute-resolution program to incorporate the requirements of § 18.2.2, including its one-or-three-arbitrator procedure, and Excel's failure to do so rendered the Excel DRA invalid. *Id.* Plaintiff presented that contention to the arbitrator after obtaining the LETSA and requested dismissal of the arbitration or, alternatively, a stay so that this Court could determine the Excel DRA's validity. Dkt. No. 80-6 at 1–5.

In denying Plaintiff's Motion to Conform and related requests, the arbitrator considered the Excel DRA and the circumstances under which the arbitration had proceeded. Dkt. No. 79-7 at 1. He noted that Plaintiff had requested arbitration pursuant to the Excel DRA, that this Court had compelled arbitration pursuant to that agreement, that the Excel DRA covered Plaintiff's personal injury claim against Allison, and that Plaintiff had submitted his claim to the AAA pursuant to the Excel DRA. *Id.* at 1–3. The arbitrator also addressed Plaintiff's reliance on the LATSA and concluded that Article 19 of that agreement required Allison to maintain a dispute-resolution program governing claims involving Allison's employees, whereas Plaintiff was employed by Excel. *Id.* at 2. Alternatively, assuming Plaintiff was a third-party beneficiary of the LATSA, the arbitrator determined that Plaintiff

had waived any right to proceed under that agreement based on his conduct in the arbitration. *Id.* at 2–3.

The contractual provisions before the arbitrator supplied a basis for distinguishing the arbitration procedure governing disputes between Limetree and its contractors from the procedure governing employment-related disputes involving contractor employees. As discussed above, § 18.2.1 of both the LATSA and the LETSA expressly excludes "employment related disputes as provided in Article 19" from the disputes between Limetree and the respective contractor governed by Article 18. Dkt. No. 79-2 at 24; Dkt. No. 79-3 at 24. Article 19, in turn, requires each contractor to maintain an employee dispute-resolution program covering personal injury and tort claims involving its employees. Dkt. No. 79-2 at 25; Dkt. No. 79-3 at 25. And Schedule A to each agreement—the Employment Arbitration Policy that § 18.2.3 identifies as the model for employee agreements—provides that "[t]here shall be one arbitrator selected by AAA." Dkt. No. 79-2 at 31; Dkt. No. 80-13 at 2.

The Excel DRA follows that employee-arbitration structure. It covers tort and personal injury claims arising from Plaintiff's employment and presence at the Refinery, expressly extends to claims against other contractors working there, and provides for final and binding arbitration before "a neutral arbitrator" under the AAA Employment Arbitration Rules. Dkt. No. 79-1 at 1. Those provisions provided a contractual basis for treating Plaintiff's personal injury claim against Allison as governed by the employee-arbitration framework reflected in Article 19, Schedule A, and the Excel DRA rather than Article 18's commercial arbitration procedure governing disputes between Limetree and its contractors.

Plaintiff alternatively argues that, if the LATSA and the LETSA do not govern the arbitration, Allison could not enforce the Excel DRA because Allison was not a signatory to that agreement. Dkt. No. 81 at 3, 5–6. However, the Excel DRA expressly extends Plaintiff's agreement to arbitrate to tort and personal injury claims against other contractors or subcontractors working at the Limetree facility. Dkt. No. 79-1 at 1. This Court previously relied on that language in concluding that Plaintiff's personal injury claim against Allison fell within the scope of the Excel DRA. Dkt. No. 29 at 4–5 & n.1. The arbitrator therefore had a contractual basis for treating Plaintiff's claim against Allison as covered by the Excel DRA notwithstanding Allison's status as a nonsignatory.

Plaintiff further relies on Article 19's requirement that Limetree confirm that the contractor's employee dispute-resolution program contains required provisions, "including but not limited to the language requirements set forth in Section 18.2.2." Dkt. No. 79-2 at 25; Dkt. No. 79-3 at 26. He interprets that cross-reference as requiring the Allison and Excel employee dispute-resolution programs to incorporate § 18.2.2's one-or-three-arbitrator procedure of the LATSA and the LETSA. Dkt. No. 79 at 8–15. But the existence of that competing interpretation does not establish that the arbitrator exceeded his powers. The arbitrator was authorized to resolve disputes concerning the interpretation, applicability, enforceability, and formation of the Excel DRA, Dkt. No. 79-1 at 2, and Plaintiff himself placed the effect of the LATSA and the LETSA on the Excel DRA before him. *See* Dkt. No. 79-6. Under § 10(a)(4), the Court does not decide which interpretation of those provisions it would adopt in the first instance. The relevant question is whether the arbitrator was interpreting the

agreements and submissions the parties placed before him. *See Sutter*, 675 F.3d at 219–20; *Oxford Health Plans*, 569 U.S. at 569.

Plaintiff also argues that Excel's failure to comply with the LETSA rendered the Excel DRA itself void. Dkt. No. 79 at 8–12. However, the LETSA supplied a contractual basis for rejecting that argument. Section 18.2.3 expressly identifies the consequence of a contractor's failure to obtain the required employee agreement as a "material Breach of CONTRACTOR's obligations under this Agreement." Dkt. No. 79-3 at 25. It does not expressly provide that such noncompliance renders a separately executed employee arbitration agreement void. The Excel DRA likewise contains no provision making its enforceability dependent on Excel's compliance with the LETSA. Dkt. No. 79-1 at 1–2.

The arbitrator therefore did not resolve Plaintiff's challenge by imposing an arbitration procedure untethered to the contractual materials before him. His written Order relied on the Excel DRA and the LATSA and reflects that he reviewed Plaintiff's Reply and accompanying exhibits, through which Plaintiff had presented his challenge based on the LETSA. Dkt. No. 79-6 at 1–5; *see also* 79-7 at 1–4. Even if Plaintiff's interpretation of those agreements were the better one, that disagreement concerns whether the arbitrator correctly rejected Plaintiff's contractual challenge, not whether he exercised authority the parties had not conferred upon him. *See Sutter*, 675 F.3d at 220; *Oxford Health Plans*, 569 U.S. at 569.

**2. The Number of Arbitrators**

Plaintiff next contends that the arbitrator exceeded his powers by allowing the arbitration to proceed before one arbitrator rather than a three-member panel. Dkt. No. 79 at 12–15. In support of that contention, Plaintiff relies on § 18.2.2 of both the LATSA and the LETSA as well as § 5 of the FAA. *Id.* Section 18.2.2 of the LATSA and the LETSA provides for three arbitrators when the amount in controversy exceeds $1 million. Dkt. No. 79-2 at 24; Dkt. No. 79-3 at 24. Section 5 provides that, when an arbitration agreement specifies "a method of naming or appointing an arbitrator or arbitrators," that method "shall be followed." 9 U.S.C. § 5; *see also* Dkt. No. 79 at 12–13. Because Plaintiff sought substantially more than $1 million in damages, he contends that § 18.2.2 supplied the governing method of appointing arbitrators and therefore required a three-member panel. *See* Dkt. No. 79-4 at 3–4.

However, the contractual materials presented to the arbitrator provided support for Allison's position that § 18.2.2 did not apply to Plaintiff. Section 18.2.1 of both the LATSA and the LETSA expressly excludes "employment related disputes as provided in Article 19" from the disputes between Limetree and its contractor governed by Article 18. Dkt. No. 79-2 at 24; Dkt. No. 79-3 at 24. Article 19 separately addresses employment-related disputes and requires covered disputes involving contractor employees, including personal injury and tort claims, to be submitted to binding arbitration. Dkt. No. 79-2 at 25–26; Dkt. No. 79-3 at 25–26. Schedule A to both the LATSA and the LETSA provides that covered employee disputes will proceed before "one arbitrator selected by AAA." Dkt. No. 79-2 at 31; Dkt. No.

80-13 at 2. The Excel DRA likewise provides for final and binding arbitration before "a neutral arbitrator" under the AAA Employment Arbitration Rules. Dkt. No. 79-1 at 1.

Against that contractual backdrop, the arbitrator treated Plaintiff's arbitration as proceeding pursuant to the Excel DRA rather than § 18.2.2 of the LATSA or the LETSA. In his October 31, 2024 Order, he relied on the fact that Plaintiff had requested arbitration pursuant to the Excel DRA, that this Court had compelled arbitration pursuant to that agreement, that the Excel DRA covered Plaintiff's personal injury claim against Allison, and that Plaintiff had submitted his claim to the AAA pursuant to the Excel DRA. Dkt. No. 79-7 at 1–3. The arbitrator therefore denied Plaintiff's request to alter the proceedings to require additional arbitrators. *Id.* at 3–4.[4]

In further support of his contention that the arbitrator exceeded his powers by proceeding before a single arbitrator, Plaintiff relies on *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830 (11th Cir. 1991), *Food Handlers Local 425 v. Pluss Poultry, Inc.*, 260 F.2d 835

---

[4] Plaintiff also challenges the arbitrator's alternative determination that, even assuming Plaintiff was a third-party beneficiary of the LATSA, Plaintiff had waived any right to proceed under its provisions. Dkt. No. 79-7 at 2–3. The arbitrator relied on Plaintiff's request for arbitration pursuant to the Excel DRA, the Court's Order compelling arbitration under that agreement without objection from Plaintiff, Plaintiff's failure to object to the appointment of the sole arbitrator, and Plaintiff's delay of approximately nineteen months before filing his Motion to Conform. *Id.* Plaintiff maintains that, because he filed his Motion to Conform before the arbitration hearing, he preserved his challenge to the selection process. Dkt. No. 81 at 6–7. The Court need not determine whether Plaintiff's objection was preserved because the arbitrator's waiver determination was an alternative basis for denying Plaintiff's request. *See* Dkt. No. 79-7 at 1–3. As discussed herein, the arbitrator separately determined that the Excel DRA, rather than § 18.2.2 of the LATSA or the LETSA, governed the arbitration. Thus, even assuming Plaintiff preserved his objection, he must still establish that the arbitrator exceeded his powers in determining which procedure governed the number of arbitrators.

(8th Cir. 1958), and *Local 227, International Hod Carriers v. Sullivan*, 221 F. Supp. 696 (E.D. Ill. 1963). In each of those cases, an arbitration award was rejected where the proceedings did not conform to the panel composition prescribed by the agreement governing the arbitration. In *Szuts*, the governing arbitration agreement expressly required "at least three arbitrators," but the proceedings continued before two arbitrators after one arbitrator was removed. 931 F.2d 830, 830–31 (11th Cir. 1991). Similarly, in *Food Handlers*, the governing collective-bargaining agreement required a three-member arbitration board, but the arbitration proceeded through a different procedure. 260 F.2d 835, 836–38 (8th Cir. 1958). And in *Local 227*, the governing agreement and the parties' stipulation contemplated a four-member board, but a single arbitrator conducted the proceeding and issued the award. 221 F. Supp. 696, 698–701 (E.D. Ill. 1963).

However, Plaintiff's reliance on those cases is misguided. In *Szuts*, *Food Handlers*, and *Local 227*, vacatur was warranted because the arbitration proceedings did not comply with the arbitration agreement governing the parties' dispute. Here, by contrast, the arbitrator determined that the Excel DRA governed the arbitration and proceeded in accordance with that agreement. Plaintiff's disagreement with the arbitrator's determination as to which panel-selection provision controlled does not establish that the arbitrator exceeded his authority under § 10(a)(4). Rather, the relevant question is whether the arbitrator rationally derived that determination from the parties' agreements and submissions. *See Sutter*, 675 F.3d at 219–20. The Court finds that he did. Faced with the competing contractual provisions that the parties presented to him, the arbitrator concluded that the Excel DRA governed and

permitted the arbitration to proceed under its terms. Section 10(a)(4) does not authorize vacatur merely because Plaintiff advances a different interpretation of those provisions. *See id.* Accordingly, vacatur on this ground is not warranted.

**3. Virgin Islands Law and the *Banks* Analysis**

Plaintiff also contends that the arbitrator exceeded his powers by failing to properly apply substantive Virgin Islands law. Dkt. No. 79 at 16–19. The parties agreed that substantive Virgin Islands law would govern the arbitration. Dkt. No. 79-4. Plaintiff does not contend that the arbitrator applied the law of another jurisdiction. Rather, he argues that the arbitrator failed to properly apply Virgin Islands law in two respects. *See* Dkt. No. 79 at 16–19. First, he contends that the arbitrator improperly relied on § 49 of the Restatement (Third) of Torts to define a "possessor of land" without conducting an independent *Banks* analysis. *Id.* at 16–18. Second, he contends that the arbitrator failed to consider the duty to warn recognized under Virgin Islands law even where a defendant does not possess or control the premises. Dkt. No. 79 at 19 (citing *Simkins,* 79 V.I. 931).

In *Banks*, the Supreme Court of the Virgin Islands rejected the automatic or mechanical application of a Restatement provision as the governing common law of the Virgin Islands. 55 V.I. at 979–81. Therefore, when confronting an issue of Virgin Islands common law that the Supreme Court of the Virgin Islands has not yet addressed, a court must consider whether Virgin Islands courts have previously adopted a particular rule, whether the rule is followed by a majority of other jurisdictions, and, most importantly, which approach represents the soundest rule for the Virgin Islands. *Id.*; *Government of the Virgin*

*Islands v. Connor*, 60 V.I. 597, 600–04 (V.I. 2014). To that end, a Restatement provision may therefore be persuasive authority, but it does not become controlling Virgin Islands law merely because it appears in a Restatement.

Here, the arbitrator did not conduct an independent *Banks* analysis. However, in addressing negligence, the arbitrator cited *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016), for the elements of a negligence claim. Dkt. No. 79-4 at 10. In addressing premises liability, he relied on Virgin Islands authority for the proposition that possession or control of the premises provides the basis for the duty of care imposed on a possessor of land. *Id.* at 11. He then turned to § 49 of the Restatement (Third) of Torts to determine who qualifies as a "possessor of land" and cited *Davis by Bynoe v. American Youth Soccer Organization*, No. ST-2009-CV-00070, 2024 WL 4710913, at *10 (V.I. Super. Ct. Oct. 29, 2024). *Id.* at 11–12. The court in *Davis* conducted a *Banks* analysis of § 49 before concluding that § 49's definition of a possessor of land represented the soundest rule for the Virgin Islands to adopt. The arbitrator accepted the conclusion in *Davis* and found that Plaintiff had not established that Allison possessed or controlled the area where the accident occurred. *Id.* at 12.

Plaintiff emphasizes that *Davis* is a Virgin Islands Superior Court decision rather than binding precedent and maintains that no binding Virgin Islands Supreme Court decision had adopted § 49 as the governing definition of a possessor of land. Dkt. No. 79 at 18–19. He therefore argues that the arbitrator was required to conduct his own *Banks* analysis before applying § 49. *Id.* The authorities on which Plaintiff relies establish the obligation of Virgin Islands courts to conduct a *Banks* analysis when resolving an unsettled issue of Virgin Islands

common law. However, under § 10(a)(4), once the arbitrator has undertaken in good faith to resolve a legal issue submitted to him, the Court does not inquire whether he committed an error of law in doing so. *See, e.g.*, *Bayside Construction*, 2021 WL 3666804, at *2–3; *Sutter*, 675 F.3d at 220; *see also France v. Bernstein*, No. 1:25-cv-00192, 2025 WL 1550741, at *10–11 (M.D. Pa. May 30, 2025). The failure to conduct an independent *Banks* analysis before relying on § 49, concerns the manner in which the arbitrator resolved a legal issue submitted to him, not whether he exercised authority beyond that conferred by the parties. *See Bayside Construction,* 2021 WL 3666804, at *2–3 (declining to determine whether the arbitrator had committed legal or factual error after concluding that the award reflected a good-faith attempt to interpret and enforce the parties' agreement).

Plaintiff separately argues that the arbitrator failed to consider whether Allison owed him a duty to warn even if Allison did not possess or control the premises. Dkt. No. 79 at 19. In support, Plaintiff relies on *Simkins v. Bank of Nova Scotia*, which Plaintiff had submitted to the arbitrator before the arbitration hearing. 79 V.I. 931; *see also* Dkt. No. 80-9 at 1. In *Simkins*, the Supreme Court of the Virgin Islands held that ownership, control, or responsibility for a dangerous condition are not prerequisites to a duty to warn or report a known danger. 79 V.I. at 940–41. Thus, Allison's lack of possession or control did not, standing alone, foreclose a potential duty to warn under Virgin Islands law. The Final Award does not separately address that principle. However, that alleged omission does not affect the arbitrator's separate causation determination.

Under Virgin Islands law, duty and causation are separate elements of negligence. *See Antilles School*, 64 V.I. at 409. Before addressing whether Allison possessed or controlled the premises, the arbitrator expressly found that, "[e]ven if Claimant could support the existence of [the alleged] duties and could prove Respondent breached any of those duties," Plaintiff failed to establish that any breach caused his damages. Dkt. No. 79-4 at 10. He found insufficient evidence establishing where the metal plate came from, how or why it fell, or that Allison was responsible for it. *Id.* at 10–11. After addressing § 49, the arbitrator reiterated that, "for the same reasons as stated above," Plaintiff had failed to establish that any breach of duty by Allison caused the metal plate to strike him. *Id.* at 12. Thus, even assuming that the arbitrator erred by failing to separately address the duty to warn recognized in *Simkins*, that alleged omission is harmless as it would not nullify his independent finding that Plaintiff failed to establish causation and therefore his claim failed as a matter of law.

Therefore, the record does not show that the arbitrator abandoned the parties' agreement to apply substantive Virgin Islands law or that he exercised authority the parties had not conferred upon him. Plaintiff's arguments concerning the sufficiency of the arbitrator's *Banks* analysis and his treatment of the duty to warn challenge the correctness or completeness of his legal analysis, not his authority or power to resolve the issues submitted to him. The arbitrator nevertheless relied on Virgin Islands authority, including a Virgin Islands decision that had conducted a *Banks* analysis of § 49, and separately determined that Plaintiff failed to establish causation even assuming the duties and breaches

he asserted. The arbitrator's determinations were therefore rationally derived from the record and legal authorities before him. *See Sutter*, 675 F.3d at 219–20, 224–25. Under § 10(a)(4), those alleged errors do not establish that the arbitrator exceeded his powers. *See id.* at 220; *Bayside Construction*, 2021 WL 3666804, at *2–3; *Oxford Health Plans*, 569 U.S. at 569.

Accordingly, Plaintiff has not satisfied his burden to vacate the Final Award on the basis that the arbitrator failed to apply substantive Virgin Islands law, thereby exceeding his authority.

### C. Whether the Arbitrator Issued an Award So Completely Irrational That It Lacks Support Altogether

The Arbitrator issued a final award that rejected Plaintiff's negligence and premises liability claims against Allison. He determined that Plaintiff had failed to meet his burden of proof. Dkt. No. 80-10 at 10–14. With respect to negligence, the arbitrator found that Plaintiff had not established where the metal plate came from, how or why it fell, or that Allison was responsible for it. *Id.* at 10–11. He further found that, even assuming Plaintiff could establish the duties and breaches he alleged, Plaintiff had not shown that any breach by Allison caused his injuries. *Id.* at 10. The arbitrator separately considered Plaintiff's premises liability theory, determined that Plaintiff had not established that Allison possessed or controlled the area where the accident occurred, and reiterated that Plaintiff had failed to establish causation. *Id.* at 11–12.

The Court's assessment in Section II.B establishes that the arbitrator's challenged determinations were grounded in the parties' agreements and submissions to him. *See supra*

II.B. That same assessment confirms that the Final Award was not so completely irrational that it lacked support altogether. *See Sutter*, 675 F.3d at 224–25 (concluding that the arbitrator's interpretation was not "totally irrational" where he endeavored to interpret the parties' agreement and give effect to the parties' intent); *see also Bayside Construction*, 2022 WL 2593303, at *3 (concluding that the arbitrator did not exceed his powers where the award was rationally derived from the parties' agreement and submissions). As previously discussed, the arbitrator relied on the Excel DRA, the relevant provisions of the LATSA and the LETSA, and the matters the parties submitted to him in addressing Plaintiff's challenges to the arbitration procedure. On Plaintiff's substantive claims, the arbitrator considered the evidence presented, applied Virgin Islands authority, and made findings concerning duty, possession or control, and causation. Those bases provide support for the Final Award and preclude a finding that it was so completely irrational that it lacked support altogether.

Because the Court concludes that the Final Award was not so completely irrational that it lacked support altogether, vacatur is not appropriate.

**CONCLUSION**

Plaintiff has not established that the arbitrator exceeded his authority or powers under § 10(a)(4). The parties submitted each challenged matter to the arbitrator. The Excel DRA delegated disputes concerning its interpretation, applicability, enforceability, and formation to him; Plaintiff asked him to decide the effect of the LATSA and the LETSA and the number of arbitrators; and the parties submitted to the arbitrator Plaintiff's negligence and premises liability claims for resolution under the terms of the Excel DRA and substantive

Virgin Islands law. Plaintiff has also not shown that the arbitrator's determinations could not rationally be derived from the parties' agreements and submissions or that the Final Award was so completely irrational that it lacked support altogether. The arbitrator interpreted the contractual provisions the parties presented, resolved their competing positions concerning the arbitration procedure, and applied Virgin Islands authorities to Plaintiff's substantive claims. Consequently, because § 10(a)(4) does not authorize the Court to vacate an award merely because a party disagrees with the contractual or legal determinations made by the arbitrator, Plaintiff's Motion must be denied. *See Sutter*, 675 F.3d at 219–20, 223–24.

Accordingly, it is hereby **ORDERED** that Plaintiff Rowdy Whittington's Motion to Vacate Arbitration Award and to Decline Remand for Arbitration, Dkt. No. 75, is **DENIED**.

ENTER:

Dated: September 11, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
MAGISTRATE JUDGE